Senechalle v. Tate 






REVERSED & REMANDED 11 OCTOBER 1990

NO. 10-90-072-CV
Trial Court
# 41,764D
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

ANNETTE SENECHALLE,
   Appellant
v.

ENOCH VAN TATE,
   Appellee

* * * * * * * * * * * * *

 From 40th Judicial District Court
Ellis County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
This is an appeal by Annette Senechalle, appellant and
petitioner below, from a judgment in a paternity suit decreeing
that Enoch Van Tate, respondent below, is not the father of the
child Jessica Jade Tate.
Petitioner (appellant) Annette Senechalle, mother of the child
Jessica, born July 16, 1986, filed this suit alleging that the
respondent Enoch Van Tate was the biological father of the child
Jessica, and seeking a judgment establishing paternity of the
alleged father, child support, and attorney's fees.
Respondent answered denying paternity of the child, asserted
he had never had any sexual connection with petitioner, agreed to
scientific testing, and sought judgment to such effect.
Trial was before the court which after hearing rendered
judgment decreeing respondent not to be the father of the child
Jessica.
The trial court filed Findings of Fact and Conclusions of Law
summarized as follows:
Findings of Fact
(1)Petitioner is the natural mother of the child
subject of this suit.
(2)Petitioner testified she had sexual intercourse
with respondent one time approximately 9 months
before the child's birth and had not had sexual
intercourse with any other man during the period of
possibility and respondent was the father of the
child.
(3)Respondent testified that he had never had sexual
intercourse with petitioner and that he was sterile
as a result of injuries received in an accident in
1970.
(4)Dr. Barwick testified through deposition that as a
result of blood tests performed by Roche Biomedical
Laboratories that in his opinion the alleged father
has a probability of paternity of 99.91%.
(5)Dr. Moore testified he was a specialist in urology
and that he had examined and tested and reviewed
the medical records of the alleged father and that
in his opinion the respondent was sterile as a
result of the 1970 accident and had been for many
years. In his opinion, he is 100% certain that the
alleged father was incapable of fathering the
subject child.
(6)The evidence offered by both petitioner and
respondent was equally unimpeached, unreconciled
and diametric.
(7)The petitioner failed to prove the allegations by a
preponderance of the evidence.
Conclusions of Law
Respondent is determined not to be father of the child.
Petitioner appeals contending, among other matters, that (1)
the judgment of the trial court is against the great weight and
preponderance of the evidence as to be manifestly unjust or clearly
wrong; and (2) the trial court erred in finding the evidence
offered by petitioner and respondent was equally unimpeached,
unreconciled, and diametric.
Petitioner is a woman 37 years old who lives in the country
and owns some horses. Respondent is 45 years old and does
horseshoeing. Petitioner met respondent in August 1983 when he
came to shoe her horses. She testified he first kissed her on
March 2, 1984, and that they first had intercourse on April 2,
1984; that their affair continued very strong until November 1984;
that she didn't see him again until February 1985 at which time
their affair was rekindled; that they had intercourse on November
1, 1985; that he was the only man with whom she had intercourse
since 1982. She testified she went to the doctor on December 16,
1985, and found out she was pregnant; that she called respondent on
the telephone that night and told him and he was not too happy;
that he came to her place and shoed horses in April; and that the
child was born July 16, 1986. She called him that the child was
born and he came out about 2 weeks later and denied to her that the
baby was his.
Blood tests ordered by the trial court indicated a 99.91%
probability of paternity by respondent.
Respondent testified he had never had intercourse with
petitioner but acknowledged drinking coffee with her while at her
house to shoe her horses, and acknowledged that she thought there
was more going on in the relationship than his just shoeing her
horses. He testified he had been married to his wife 27 years and
during this period never had an affair.
Dr. Moore testified that he had examined respondent and his
medical records in July 1987; that the records reflected respondent
had suffered an injury to his pelvic region in 1970 when a horse
fell on him and that in his opinion he was rendered sterile. He
testified further that examination of respondent's semen on 2
occasions in July 1987 revealed no sperm, and that in his opinion
respondent was sterile.
Respondent however testified that a child was conceived by him
in 1970, 2 months after the accident which, according to Dr. Moore,
caused sterility.
As noted, the trial court found that respondent was not the 
biological father of the child.
Summarizing: Petitioner testified respondent was
the only person with whom she had sexual intercourse
since 1982, and that he was the father of her child. 
Respondent testified he had never had sexual intercourse
with petitioner.
The scientific blood testing done on petitioner,
respondent and the child reflected a 99.91% probability
that respondent was the father of the child.
Respondent testified he was sterile and had been
since an accident in 1970. Dr. Moore testified he found
no sperm in respondent's semen in 1987; and he believed
respondent was rendered sterile by his 1970 accident.
But respondent fathered a child after his 1970
accident.
We think the trial court's judgment against the great weight
and preponderance of the evidence so as to be manifestly unjust;
and further find the trial court erred in finding the "evidence
offered by petitioner and respondent was equally unimpeached,
unreconciled, and diametric". Contentions referred to as 1 and 2,
supra, are sustained.
The judgment of the trial court is reversed and remanded for
another trial.
REVERSED & REMANDED
 
                          FRANK G. McDONALD
DO NOT PUBLISHChief Justice

[Participating: Chief Justice Thomas, Justices Hall and Means and
Chief Justice McDonald (Retired)]



 12pt">4.The trial court has no independent recollection of how the jury waiver was handled
in the case.
5.Appellant testified that he did not sign a jury waiver form.
6.Appellant testified he was orally admonished as to his right to a jury trial, that he
was aware of his right to a jury trial, that he did not object to being tried without a
jury, and that he did not indicate that he wanted a jury trial.
7.The record does not reflect all of the necessary steps for a valid waiver of a jury trial
as required by Article 1.13 of the Texas Code of Criminal Procedure.
      Appellant argues that his conviction should be reversed because the record does not contain
a written jury waiver form as required by Article 1.13 of the Texas Code of Criminal Procedure. 
The State contends Appellant is precluded, under the Helms rule, from raising the issue because
his non-negotiated plea of nolo contendere was voluntary and the alleged error is a non-jurisdictional error that occurred prior to Appellant entering his plea. In Helms v. State, 484
S.W.2d 925, 927 (Tex. Crim. App. 1972), the court held that "where a plea of guilty is
voluntarily and understandingly made, all non-jurisdictional defects, including claimed deprivation
of federal due process, are waived." The same effect are: Shallhorn v. State, 732 S.W.2d 636,
637 (Tex. Crim. App. 1987); Morin v. State, 632 S.W.2d 265, 268 (Tex. Crim. App. 1983);
Dunmar v. State, 853 S.W.2d 184 (Tex. App.—Corpus Christi 1993); and Soto v. State, 837
S.W.2d 401, 403 (Tex. App.—Dallas 1992).
      There was no plea bargain in this case. Appellant orally waived a jury prior to entry of his
non-negotiated plea of nolo contendere. Under the foregoing authorities, Appellant waived his
right to a signed jury waiver, which is a non-jurisdictional defect.
      Appellant's point is overruled and the judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Chief Justice Thomas,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed July 26, 1995
Do not publish